A.

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

**F I L E D**
JAN 13 2005
Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-CR-127-K |
| | ) | |
| BOBBY WAYNE HALEY, | ) | |
| | ) | |
| Defendant. | ) | |

## TRIAL BRIEF OF THE UNITED STATES

The United States of America, through David E. O'Meilia, United States Attorney, and Leena Alam, Assistant United States Attorney, respectfully submits its Trial Brief in the above-styled case.

### I. STATUS OF THE CASE

A. TRIAL DATE: January 24, at 9:30 a.m.

B. ESTIMATED TIME OF TRIAL: Two to three days.

C. STATUS OF DEFENDANT: Pretrial Supervision.

D. WAIVER OF TRIAL BY JURY: None.

E. INTERPRETER: Not required.

F.  WITNESS LIST: As follows, dependent on stipulations.

   1. Jeff Henderson
   2. Cpl. Dan Fuller
   3. Earnest Bonham
   4. Bill Yelton
   5. James Comstock
   6. Paul Schroeder
   7. Robert Yerton
   8. Josh Petree
   9. Luke Sherman

G.  EXHIBIT LIST: As follows, depending on stipulations.

   1. Baggie containing 334.60 grams of cocaine hydrochloride.
   2. Baggie containing 138.4 grams of cocaine base
   3. Glass Bowl containing white powder residue
   4. Baggie containing 4 individually wrapped rocks of cocaine base, total weight 12.99 grams.
   5. Two sets of digital scales
   6. Razor blade
   7. Small blue knife
   8. Two boxes Arm & Hammer baking soda
   9. Multiple used plastic baggies
   10. Residency papers bearing Bobby Haley's name
   11. Microwave containing white powder residue.
   12. Baggie containing .6 grams of cocaine base

## II. CHARGES IN THE INDICTMENT

A.  Count One - Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§841(a)(1) and 841(a)(1)(A).

B.  Count Two - Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§841(a)(1) and 841(a)(1)(C).

## III. STATEMENT OF FACTS

In May of 2004, Tulsa Police Officer Henderson met with a reliable confidential informant (RCI) (who had provided reliable information on at least 5 investigations), who had been to a salvage yard located at 3815 North Lewis and observed Bobby Haley selling cocaine out of the salvage yard. The RCI pointed out the business and told Henderson that the cocaine was packaged for sale, and that s/he had seen Haley conduct drug transactions from the salvage yard.

After receiving the information, TPD Officers Henderson and Bill Yelton conducted surveillance on the salvage yard. They saw Bobby Haley coming and going from the salvage yard driving a white truck, and locking the padlock on the front gate at the salvage yard. They also saw Haley move freely about the property. In particular, Henderson and Yelton saw a great deal of short-term traffic between the hours of 11 p.m. and 3a.m. People would arrive, walk into the shop at the salvage yard, and leave within minutes.

Based on this information, Henderson prepared a search warrant affidavit for the salvage yard, and a search warrant, authorizing a nighttime search, was issued on May 27, 2004.

On May 27, 2004, at 10:37 p.m., TPD officers and ATF agents served the search warrant at the salvage yard. The salvage yard contained two separate structures, a small living quarters and a separate shop. In the kitchen of the living quarters, they found Bobby

Haley. In that kitchen and in direct proximity to Haley, they found: (1) a plastic baggie with approximately 345 grams of powder cocaine; (2) a plastic baggie with approximately 156 grams of cocaine base; (3) a glass bowl with suspected cocaine residue; (4) a plastic baggie with four individually wrapped "eight-balls" (~3.5 gram chunks) of cocaine base; (5) two sets of digital scales; (6) a razor blade and (7) a small blue knife; (8) two boxes of baking soda; (9) multiple used baggies with suspected cocaine residue; (10) residency papers; and (11) a microwave containing suspected cocaine residue. On Haley's person, they found $1500 cash and a plastic baggie with tan chunks of cocaine base weighing approximately 2 grams. Elsewhere on the property, officers found five other individuals: Ray McDonald, Ramon Stevens, Robert Morris, Vernon William, and Mario Smart.

## IV. LEGAL ISSUES

### A. Stipulations

The United States has proposed a stipulation to the narcotics lab test results for trial, and a stipulation to the admissibility of each of the items on the government's exhibit list. As of the date of this brief, Defendant has not executed either proposed stipulation.

### B. Admissibility of References to Reliable Confidential Informant

The Tenth Circuit has recognized that out-of-court statements by a reliable confidential informant may be properly be introduced as non-hearsay when not offered for the truth of the matter asserted. *United States v. Bowser*, 941 F. 2d 1019, 1021 (10th Cir. 1991). In particular, the Tenth Circuit has held that testimony which is not offered to

prove the truth of an out-of-court statement, but is offered instead for relevant context or background, such as to explain why a government investigation was undertaken, is not considered hearsay. *United States v. Wilson*, 107 F.3d 774, 780-781 (10th Cir. 1997).

Specifically, in *Bowser*, an agent was permitted to testify that a confidential informant told him that the defendant carried a gun during drug transactions and that defendant would like to kill the agent. *Bowser*, 941 F. 2d at 1021. The Tenth Circuit held that the agent's testimony was not hearsay because it was offered not to prove that defendant carried a gun or intended to kill the agent, but merely to explain the officer's aggressive conduct toward the defendant. *Id.*

Similarly, in *Wilson*, the district court allowed a police officer to testify about information he had received from confidential sources about an individual who was selling drugs out of a certain location. *Wilson*, 107 F.3d at 781. The Tenth Circuit affirmed, holding that the district court did not err in admitting the officer's testimony because it was not offered to prove the truth of the matter asserted; but rather, was offered to explain the reason why the government began its investigation of the defendant's address. *Id.*

Here, just as in *Wilson*, any reference by police officers to the reliable confidential informant's statements would be offered to explain the background that led the officers to conduct surveillance of the salvage yard, and eventually to obtain a search warrant, as well as to explain the manner in which the search warrant was executed. Accordingly, the

testifying officers may introduce information received from the reliable confidential informant in order to explain the reason the government's investigation was commenced.

C.  **Scope of Expert Testimony Permissible**

Under the standard for admission of expert testimony under Federal Rule of Evidence 702 established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, a "trial court must determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will allow the trier of fact to understand or determine a fact in issue." *United States v. Muldrow*, 19 F.3d 1332, 1337 (10th Cir. 1994). The Tenth Circuit has consistently permitted experienced law enforcement officers with specialized knowledge to provide expert testimony regarding the drug trade. *See, e.g., United States v. Diaz-Zappatta*, 131 F.3d 152, 1997 WL 731790 at *3 (10th Cir. Nov. 35, 1997), *United States v. Peach*, 113 F.3d 1247, 1997 WL 282867 at *3-4 (10th Cir. May 28, 1997); *United States v. Quintana*, 70 F.3d 1167, 1170-71 (10th Cir. 1995); *Muldrow*, 19 F.3d at 1338; *United States v. Sturmoski*, 981 F.2d 452, 459 (10th Cir. 1992).

The scope of such testimony permitted is fairly broad, in the interest of helping the jury understand the drug trade and thereby understand the significance of the evidence. *See United States v. McDonald*, 933 F.2d 119, 1522 (10th Cir. 1991). For instance, police officers may testify regarding their education and training in the investigation of drugs and drug trafficking, quantities in which drugs are sold and drug prices. *Muldrow*, 19 F.3d at 1338. They may testify regarding the use of firearms in the narcotics trade, and the purposes

for which drug dealers bring firearms to drug transactions. *Sturmoski*, 981 F.2d at 459; *Diaz-Zappatta*, 1997 WL 731790 at *3. They may testify about the differences between drug users and dealers and may opine as to whether the circumstances of a given case are consistent with distribution or use. *Peach*, 1997 WL 282867 at *3; *United States v. Watson*, 69 F.3d 549, 1995 WL 628114 at *1-2 (10th Cir. Oct. 26, 1995); *Muldrow*, 19 F.3d at 1338. Specifically, they may testify about the paraphernalia that indicate that a quantity of drugs was intended for personal use, and the "tools of the trade" which would indicate distribution. *See e.g., McDonald*, 933 F.2d at 1522 (officer permitted to testify about significance of razor blade, pager, loaded firearm and large quantity of cash, which all provided circumstantial evidence of intent to distribute); *United States v. Perry*, 25 Fed. Appx. 713, 2001 WL 1230586 at *6 (10th Cir. Oct. 16, 2001) (razor blades and plate covered with white powdery residue indicated distribution); *Peach*, 1997 WL 282867 at *3 (smoking devices indicate use, pagers and firearms indicate distribution).

In *McDonald*, the Tenth Circuit upheld the district court's decision to permit a police supervisor with extensive narcotics training and experience to testify as an expert on narcotics distribution, recognizing that a person possessing no knowledge of the drug world would have difficulty comprehending the significance of the facts adduced without the specialized knowledge available from the testimony of an expert witness. 933 F.2d at 1522. Similarly, in *Peach*, the Tenth Circuit upheld the district court's decision permitting a Wichita police detective to testify as an expert witness on narcotics sales, and the difference

between users and dealers of controlled substances, based on his training and experience in narcotics sales, because "[w]ithout understanding the drug trade and how a drug dealer works, a jury could not be expected to understand the significance of the evidence." 1997 WL 282867 at *3.

The Tenth Circuit cases on this issue uniformly approve the use of expert testimony to illuminate the arcana of the drug trade and explain the significance of various evidence for juries that presumably are unfamiliar with the area. In this case, the proposed testimony of Sgt. Luke Sherman of the Tulsa Police Department falls within the scope of testimony that has repeatedly been approved in cases of this type. Accordingly, he should be permitted to testify regarding the practices of drug users and dealers, and the indicia that a quantity of a controlled substance was possessed for distribution or for personal use.

## C. Discovery

The United States has already provided all discovery under Fed. R. Crim. P. 16 and all materials under the Jencks Act, 18 U.S.C. § 3500 et seq. The United States has requested reciprocal discovery, specifically including notice of any experts Defendant intends to call, and has been provided no reciprocal discovery.

## D. Trial Issues

### 1. Factual Issues

Defendant has suggested that his primary defense is that the drugs and paraphernalia found in his presence did not belong to him, therefore the primary issue at trial will be whether Defendant knowingly possessed the cocaine and cocaine base.

**2. Legal Issues**

**a. Defendant's Prior Convictions**

If Defendant were to take the stand, he would bring into issue the admissibility of evidence of his prior felony conviction under Federal Rules of Evidence 609(a).

## V. CONCLUSION

This brief is offered to notify the Court of factual and legal issues which may arise at trial. The United States requests that the Court grant it leave to submit additional memoranda should other issues emerge.

Respectfully Submitted,

DAVID E. O'MEILIA
United States Attorney

Leena Alam, OBA#19035
Assistant United States Attorney
110 West Seventh Street; Suite 300
Tulsa, Oklahoma 74119
918.382.2700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th of January, 2005, a true and correct copy of the foregoing was mailed, first-class postage prepaid, to

Wesley E. Johnson
406 S. Boulder
Suite 400
Tulsa, OK 74103

_____
Assistant United States Attorney